IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| RICHARD GARNER, | Case No:  3:23-cv-03119-MGL-SVH |
| Plaintiff, | |
| v. | COMPLAINT |
| PRISMA HEALTH, DANIEL LEONARD, in his individual capacity, and BRENDA PICKENS, in her individual capacity, | |
| Defendants. | |

## INTRODUCTION

Plaintiff Richard Garner, by and through his undersigned attorneys, brings the Causes of Action of Breach of Contract, and Breach of Contract with Fraudulent Intent, and Race Discrimination in Violation of 42 U.S.C § 1981 against Prisma Health, Daniel Leonard, and Brenda Pickens ("Defendants"), and civil conspiracy against Daniel Leonard and Brenda Pickens based on the following allegations.

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. Section 2000e (5), this being a proceeding to enforce rights and remedies secured under 42 U.S.C. Section 1981 and other Federal statutes. This Court also has pendant and supplementary jurisdiction over so much of this action as is based on state law.

2. Venue is proper in the Columbia Division, because the causes of action arose therein, the acts and practices complained of occurred there, and it is where Defendants do business and may be found.

## PARTIES

3. Plaintiff Richard Garner is an African American male and a citizen of the United States. Plaintiff resides in Richland County, South Carolina within this judicial district.

4.  Defendant Prisma Health is a non-profit organization incorporated in and existing under the laws of the State of South Carolina. Defendant is located in Columbia, South Carolina, and conducts business and operations in the State of South Carolina.

5.  Upon information and belief, Defendant Daniel Leonard is an employee of Defendant Prisma Health and resides in Richland County, South Carolina.

6.  Upon information and belief, Defendant Brenda Pickens is an employee of Defendant Prisma Health and resides in Richland County, South Carolina.

<u>FACTS</u>

7.  Plaintiff began his employment with Defendant as an Applications (App) Development Analyst II in or around January 2017.

8.  At all times, Plaintiff performed his duties to the best of his ability. Plaintiff asserts that he did not receive any corrective or disciplinary actions against him while employed with Defendant.

9.  Plaintiff states that he was the only African American male employee on the Integration and Development Team of approximately 9-10 developers. Plaintiff asserts that he is as skilled and has as much education as his team members as he has been in Information Technology since 2001.

10. Plaintiff asserts that because of his race (African American) he was pretextually terminated from his position with Defendant on or around March 7, 2023.

11. Upon information and belief, Plaintiff was told that he was terminated due to a reduction in force and series of layoffs; however, Plaintiff was the only person from his team to be laid off and asserts that his termination was pretextual and due to his race (African American).

12. On or around October 2022, Plaintiff suffered a mild stroke and missed work for approximately three weeks.

13. Plaintiff states that he began noticing a stark difference in how he was treated and supervised as compared to his Caucasian counterparts upon his return to work following a medical emergency in or around October 2022.

14. Plaintiff asserts that Defendant began the scheme to pretextually terminate Plaintiff due to his race shortly after his return from medical leave.

15. Following Plaintiff's return to work, Plaintiff noticed that a new member was added to the team who was a Caucasian Female with little to no skills that Plaintiff has regarding the purpose of the Team to include: development of apps, information technology, or other aspects of the Team's roles and the individual roles of each member of the Team.

16. Plaintiff asserts that the new employee, a Caucasian female, would attend team meetings, planning sessions, and miscellaneous departmental meetings. Plaintiff later realized that this new Caucasian employee would replace him, despite appearing to have less experience, education, and skills in the industry than Plaintiff.

17. Plaintiff asserts that, following his return, required staff and supervisory one-on-one meetings to review projects, discuss workflow, and address and work-related needs became less frequent, and the amount of time spent discussing work-related matters during the meetings that did occur decreased over time, although prior to his stoke the meetings were bimonthly.

18. These meetings began to revolve less around his work responsibilities, projects, and productivity despite no significant, material changes to his intellect, ability, or performance following his return.

19. However, the racial discrimination and harassment meted out to Plaintiff by Defendant and their agents became pervasive and most apparent in or around January 2023.

20. In the weeks leading up to his lay-off, Plaintiff noticed troubling trends based on his race that made the work environment increasingly hostile and discriminatory because of his race.

21. Plaintiff also noticed that the new Caucasian employee's presence in the department and meetings became more frequent. Upon information and belief, she was assigned tasks that were usually assigned to be completed by or under the scope of Plaintiff per his title and that nature of the assignments.

22. Plaintiff asserts that he was no longer asked to provide feedback and plans for tasks and projects specifically related to his job, experience, expertise, and typical duties of Defendant.

23. During a staff meeting in or around January, Plaintiff learned that there was a meeting between the rest of his team members with management. He was not invited to the meeting despite his role on the team.

24. Upon information and belief, Plaintiff was the sole person on his team not included and was only made aware of the meeting through a statement made by a coworker, who was a member of the Team of equal rank and responsibility as Plaintiff.

25. Plaintiff received information about the meeting he was not invited to and reached out to his supervisors to be sure he did not miss any important information discussed in this meeting and to inquire to learn if there was a reason he was not invited to the meeting as to indicate dissatisfaction with him or his performance.

26. Upon information and belief, Plaintiff's direct supervisor, Mr. Daniel Leonard (Caucasian Male) did have the authority to hire or fire employees.

27. Therefore, Plaintiff asserts he was pretextually terminated on the basis of his race (African American) and replaced with a less-qualified Caucasian candidate.

## FOR A FIRST CAUSE OF ACTION
### *Breach of Contract*

28. Plaintiff reiterates each and every allegation contained in the preceding paragraphs as if set forth verbatim herein.

29. Upon information and belief, Defendant Prisma Health maintains an employee handbook including policies and practices governing the conduct of employees and their business, and policies prohibiting discrimination and harassment.

30. Plaintiff and Defendant entered into a valid and binding contract whereby Plaintiff relied on Defendants' reassurance through its agents that Defendant would act pursuant to Defendant's' policies and procedures regarding conduct in the workplace, anti-discrimination, harassment, and other applicable policies and procedures with respect to Plaintiff. Plaintiff relied on Defendant's reassurance that Defendant must follow its and procedures with respect to conduct in the workplace, anti-discrimination, and harassment, and other workplace policies and procedures.

31. Plaintiff performed his job duties with due diligence, however Defendant, through its agents, unjustifiably failed to perform their contractual duties by racially discriminating against and racially harassing Plaintiff.

32. All of these actions violate the contractual anti-discrimination provisions within Defendant's employment handbook (contract), its anti-discrimination and anti-harassment policies, workplace conduct policy, and other contractual policies and procedures of the

Defendant. Further, Defendant failed to follow the above-referenced contractual policies and procedures, when it failed to treat Plaintiff equally to its Caucasian employees as stated more fully above.

33. . Defendant, and its agents, had a responsibility to ensure that Plaintiff would not be subjected to race discrimination. Defendant, through its agents, instead chose to do such, and failed to treat Plaintiff similarly to his Caucasian counterparts under like scenarios, all in violation of the contractual guarantees provided to Plaintiff by Defendant in the employment handbook and other contractual documents.

34. Defendant's conduct, by and through its agents, was done in bad faith and breached the implied covenant of good faith and fair dealings that is implied in the employment contract.

35. As a result of Defendant's breach of contract, Plaintiff has suffered actual, compensatory, physical, mental, emotional and consequential damages stemming from the breach and other such damages as are allowable by law.

FOR A SECOND CAUSE OF ACTION

*Breach of Contract with Fraudulent Intent*

36. Plaintiff reiterates each and every allegation contained in the preceding paragraphs as if set forth verbatim herein.

37. Defendants, by and through their agents, have failed to fulfill their obligation under their own written policies, including the above-referenced anti-discrimination and anti-harassment policies, which together with their promissory and mandatory terms, form a contract with Plaintiff beyond the at-will employment relationship.

38. Defendants, by and through their agents, have breached the terms thereof by reason of an intentional design on its part to defraud Plaintiff.

39. In furtherance of such intentional design, Defendants, through their agents, intentionally and maliciously placed Plaintiff in a position of being subjected to extreme racial harassment and disparate treatment under the guise of protecting her from the same. Defendants ensured Plaintiff that she would not be subjected to the racially disparate treatment, harassment, and other policy violations which Defendants continuously meted out to Plaintiff. It became readily apparent to Plaintiff that Defendants' false reassurances were fraudulent as Defendants' continual violations of their own policies demonstrated.

40. Defendants' conduct, by and through their agents, was done in bad faith and breached the implied covenant of good faith and fair dealings that is implied in the employment contract.

41. As a result of Defendants' race discrimination and exposure of Plaintiff to Defendants' fraudulent breaches of contract, Plaintiff has suffered damages in the form of actual, compensatory, consequential, physical, mental, emotional, and other damages. Plaintiff also believes that a reasonable amount of punitive damages should be levied against Defendants on account of their unlawful treatment of Plaintiff and fraudulent contractual breaches.

## FOR A THIRD CAUSE OF ACTION
### *Race Discrimination in Violation of 42 U.S.C § 1981*

42. Plaintiff reiterates each and every allegation contained in the previous paragraphs as if set forth verbatim herein.

43. Plaintiff is a member of a protected class on the basis of his race (African American). Plaintiff was subjected to disparate treatment on the basis of his race due to Defendant and Defendant's agents racially disparate treatment towards him in violation of 42 USC § 1981.

44. Plaintiff alleges that this disparate treatment on the basis of his race while on the job was pretextual, as Defendant made promises to Plaintiff that Plaintiff would be protected from

disparate treatment on the basis of his race. Plaintiff alleges that Defendant, through its agents, initiated discriminatory and hostile practices against Plaintiff which were reckless, wanton, and intentional race discrimination based on her race to include that Defendant, by its agents, allowed Plaintiff to be discriminated against on the basis of his race to the exclusion of his similarly-situated Caucasian colleagues, who were not subject to elimination of job duties and responsibilities, or pretextual termination and replacement with a less qualified candidate.

45. Upon information and belief, Plaintiff alleges Defendant applied its policies, procedures, and standards to Plaintiff discriminatorily due to his race, including its evaluation, application, and other policies, in order to pretextually terminate him and replace him with a less qualified Caucasian candidate.

46. In failing to protect Plaintiff from racial discrimination, Defendant and its agents acted with malice and reckless indifference to the federally protected rights set out under 42 USC § 1981 and Title VII of the Civil Rights Act of 1964, as amended (42 USC § 2000e et. seq.), the South Carolina Human Affairs Law, and the United States Equal Employment Opportunity Laws.

47. Plaintiff alleges the Defendant, through its agents, initiated discriminatory practices against Plaintiff based on his race.

48. As a result of Defendant's race discrimination, Plaintiff has suffered damages in the form of actual, compensatory, consequential, physical, mental, emotional, and other damages. Plaintiff also believes that a reasonable amount of punitive damages should be levied against Defendants due to their unlawful treatment of Plaintiff.

<u>FOR A FOURTH CAUSE OF ACTION</u>
*Civil Conspiracy as to Defendant Daniel Leonard and Defendant Brenda Pickens*

49. Plaintiff reiterates each and every allegation contained in the previous paragraphs as if set forth verbatim herein.

50. Defendant Daniel Leonard exceeded the scope of his employment, abusing his supervisory capacity to cause injury to the plaintiff. This injury was both foreseeable and preventable had the Defendant adequately supervised Defendant Leonard.

51. Defendant Leonard enlisted the help of Defendant Brenda Pickens to manufacture pretextual justification to constructively terminate Plaintiff replace Plaintiff with a less qualified Caucasian candidate. Defendant Pickens's assistance, through her additional, intentional failure to communicate with Plaintiff, furthered the conspiracy.

52. The natural consequence of Defendant Leonard's and Defendant Pickens's combined actions caused special damages to Plaintiff apart from any other damages pleaded herein. Specifically, the acts in furtherance of this conspiracy as alleged have and will continue to cause Plaintiff special damages for pecuniary losses, embarrassment, humiliation, pain and suffering, mental anguish, loss of enjoyment of life, and further non-pecuniary losses.

53. Accordingly, due to the acts of Defendant and its agents, Plaintiff is entitled to injunctive relief and civil damages from Defendants Leonard and Pickens.

54. Plaintiff is further entitled to injunctive relief and/or civil damages, renumeration for lost wages and benefits, reinstatement of benefits, and front pay.

<u>JURY TRIAL REQUESTED</u>

55. Plaintiff respectfully requests a jury trial.

<u>PRAYER FOR RELIEF</u>

56. WHEREFORE, Plaintiff prays that this Honorable Court declares that Defendant's actions complained of herein violated the rights guaranteed to Plaintiffs and issue its judgment:

a. Declaring the actions complained of herein illegal.

b. Issuing an injunction enjoining the Defendants, their agents, employees, successors, attorneys and those acting in concert or participation with the Defendants, and at their direction from engaging in the unlawful practices set forth herein and any other employment practices shown to be in violation of 42 USC § 1981 (race discrimination), breach of contract, and breach of contract accompanied by a fraudulent act, and the common laws of the State of South Carolina.

c. Awarding Plaintiff compensatory and punitive damages for each Cause of Action contained herein as appropriate, which the jury should find appropriate as a result of the Defendants' unlawful discriminatory actions taken as the result of Plaintiff's race and other pled causes of action; including mental anguish, pain and suffering, harm to Plaintiff's economic opportunities, any back pay, front pay and future earnings with cost of living adjustments, prejudgment interest, fringe benefits, and retirement benefits;

d. Awarding Plaintiff his costs and expenses in this action, including reasonable attorney fees, and other litigation expenses; and

e. Granting such other and further relief as may be just and necessary to afford complete relief to the Plaintiff as this Court may deem just and proper.

[SIGNATURE BLOCK ON THE FOLLOWING PAGE]

Respectfully Submitted,


__s/Donald Gist_____
Donald Gist, Esq. Fed. ID# 7178
Erica McCrea, Esq. Fed. ID# 13493
GIST LAW FIRM, P.A.
4400 North Main Street (29203)
Columbia, South Carolina 29230
Tel. (803) 771-8007
Fax (803) 771-0063
Email: dtommygist@yahoo.com
    ericamccrea.gistlawfirm@gmail.com


June 29, 2023